NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0001012
20-MAY-2013
10:03 AM**

NO. CAAP-11-0001012

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
NANCY HARRIS, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 07-1-405)

MEMORANDUM OPINION
(By:  Foley, Presiding J., Reifurth and Ginoza, JJ.)

Defendant-Appellant Nancy Harris (Harris) appeals from the November 3, 2010 "First Amended Findings Of Fact, Conclusions Of Law, And Order Denying Defendant's Motion To Suppress Evidence And Dismiss Complaint For Remedy Of State And Federal Constitutional Violations And For Heightened Judicial Scrutiny Filed February 19, 2009" (FOFCOL) and the November 7, 2011 Judgment, both entered in the Circuit Court of the Third Circuit[1] (circuit court).  Harris was convicted of Commercial Promotion of Marijuana in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 712-1249.4(1) (1993); Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329-43.5 (1993); and Promoting a Detrimental Drug in the Second Degree, in violation of HRS § 712-1248(1) (1993).

---

[1]     The Honorable Glenn S. Hara presided.

## I.  BACKGROUND

The following facts are not disputed.  On February 15, 2007, a Hawai'i County Police Department vice officer received information from a confidential informant about drug activities at a property and residence in the District of Puna, County of Hawai'i.  The informant described the property as a church with an adjoining greenhouse containing approximately sixty marijuana plants growing inside.

That same day, the officer and two other law enforcement officers drove to the property.  The officer immediately smelled a strong odor of marijuana and, while standing on the church's driveway, spotted a three-foot tall marijuana plant outdoors.  Several people, including Harris, approached the officers on the property, identified themselves as members of the church, and stated they had a right to grow marijuana.  Harris identified herself as the president of the Sacred Truth Mission, and she said she was responsible for the property and did not have a medical marijuana permit.  One man handed the officers a document stating: "Recognized Rastafarian, Mandated to Smoke Copious Quantities of Marijuana in the Chalice and to Grow Enormous Crops of Ganja[.]"

The officers arrested Harris and the man and secured the property while one of the officers obtained a search warrant. The officer submitted the warrant at 10:27 p.m. on the same day. The warrant was approved and issued, and it indicated the warrant could be executed "at any time of day or night."  The officers then commenced a search and seizure of evidence pursuant to the warrant.

On August 23, 2007, Plaintiff-Appellee State of Hawai'i (State) indicted Harris for violations of HRS §§ 712-1249.4(1), 329-43.5, and 712-1248(1).  On February 19, 2009, Harris filed her "Motions To Suppress Evidence And Dismiss Complaint For Remedy Of State And Federal Constitutional Violations And For Heightened Judicial Scrutiny."  Harris argued the seized evidence should be suppressed because the warrant was invalid.  Harris

also claimed her prosecution violated a number of rights under the United States Constitution and the Hawai'i Constitution.

The circuit court conducted an evidentiary hearing on Harris's motion, which included testimony regarding Harris's religious beliefs and practices as a Rastafarian. On November 3, 2010, it entered its FOFCOL denying Harris's motion. The case proceeded to a jury trial, and the jury found Harris guilty as charged on all counts. The circuit court entered its Judgment on November 7, 2011, sentencing Harris to probation for concurrent terms of five and ten years; imprisonment for concurrent terms of two years, one year, and thirty days; and several monetary assessments. Harris filed a timely notice of appeal from the Judgment on November 30, 2011.

Harris raises several points on appeal essentially contending the circuit court erred in entering its FOFCOL denying her motion to dismiss the counts and to suppress evidence. Harris also argues the circuit court committed several errors during the jury trial on the counts against her.

## II.   STANDARDS OF REVIEW

A.          Findings Of Fact And Conclusions Of Law

A trial court's findings of fact are reviewed under the "clearly erroneous" standard of review. Dan v. State, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994).

> A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. The circuit court's conclusions of law are reviewed under the right/wrong standard.

State v. Locquiao, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002) (quoting State v. Harada, 98 Hawai'i 18, 22, 41 P.3d 174, 178 (2002)). "A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." Dan, 76 Hawai'i at

428, 879 P.2d at 533 (internal quotation marks and citations omitted).

B.        Constitutional Questions

The appellate court answers "questions of constitutional law by exercising our own independent judgment based on the facts of the case.  Thus, [the court reviews] questions of constitutional law under the 'right/wrong' standard."  State v. Fields, 115 Hawai'i 503, 511, 168 P.3d 955, 963 (2007) (internal quotation marks, citation, and ellipsis omitted).

Where it is alleged that the legislature has acted unconstitutionally, the Hawai'i Supreme Court has long held that "(1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable."  Convention Ctr. Auth. v. Anzai, 78 Hawai'i 157, 162, 890 P.2d 1197, 1202 (1995) (internal quotation marks, citation, and brackets omitted).

C.        Admissibility Of Evidence

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue.  When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard.  However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court.
>
> *Kealoha v. Cnty. of Hawai'i*, 74 Haw. 308, 319-20, 844 P.2d 670, 676 (1993).

State v. Heggland, 118 Hawai'i 425, 434, 193 P.3d 341, 350 (2008).

D.        Discovery

A ruling limiting discovery is reviewed for an abuse of discretion.  State v. Peseti, 101 Hawai'i 172, 178, 65 P.3d 119, 125 (2003).

E.          Juror Misconduct

> As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. The same principle is applied in the context of a motion for new trial premised on juror misconduct.
>
> The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.
>  . . . .
>
>  . . . Because the right to an impartial jury in a criminal trial is so fundamental to our entire judicial system, . . . a criminal defendant is entitled to twelve impartial jurors. Thus, the trial court must grant a motion for new trial if any member (or members) of the jury was not impartial; failure to do so necessarily constitutes an abuse of discretion.

State v. Augustin, 89 Hawai'i 215, 219, 971 P.2d 304, 308 (App. 1998) (brackets omitted) (quoting State v. Furutani, 76 Hawai'i 172, 178-79, 873 P.2d 51, 57-58 (1994)).

F.          Cruel And Unusual Punishment

In State v. Solomon, 107 Hawai'i 117, 111 P.3d 12 (2005), the Hawai'i Supreme Court held that the appellate court

> addresses arguments of cruel and unusual punishment pursuant to the following standard:
>
>> The standard by which punishment is to be judged under the "cruel and unusual" punishment provisions of both the United States and Hawaii Constitutions is whether, in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community.

Id. at 131, 111 P.3d at 26 (internal quotation marks and brackets omitted) (quoting State v. Jenkins, 93 Hawai'i 87, 114, 997 P.2d 13, 40 (2000)). "The question of what constitutes an adequate penalty necessary for the prevention of crime is addressed to the sound judgment of the legislature and the courts will not interfere with its exercise, unless the punishment prescribed appears clearly and manifestly to be cruel and unusual." Jenkins, 93 Hawai'i at 114, 997 P.2d at 40 (internal quotation marks and citation omitted). In Solomon, the Hawai'i Supreme

Court set forth the three-prong test that the court considered in determining whether a punishment was "clearly and manifestly" cruel and unusual:

> (1) the nature of the offense and/or the offender, with particular regard to the degree of danger posed by both to society; (2) the extent of the challenged penalty as compared to the punishments prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the challenged penalty as compared to the punishment prescribed for the same offense in other jurisdictions.

107 Hawai'i at 132, 111 P.3d at 27 (quoting Jenkins, 93 Hawai'i at 114, 997 P.2d at 40). "In using this test, the nature of the offense and the danger the offender poses to society are the key factors in this determination." Solomon, 107 Hawai'i at 132, 111 P.3d at 27 (internal quotation marks and citation omitted).

### III. DISCUSSION

A.        Dismissal Of Counts

In her motion seeking dismissal of the counts against her, Harris claimed her prosecution for possessing marijuana violated a number of constitutional rights under the United States Constitution and the Hawai'i Constitution.

Harris's claim based on the free exercise clauses of the U.S. and Hawai'i Constitutions is unavailing because State v. Sunderland, 115 Hawai'i 396, 168 P.3d 526 (2007) applies. In Sunderland, the Hawai'i Supreme Court concluded HRS § 712-1249 (1993) ("Promoting a detrimental drug in the third degree") is a neutral law of general applicability and does not create a mechanism allowing an individualized government assessment for exemptions, and therefore the free exercise clause is not a viable defense to prosecution. Id. at 403-04, 168 P.3d at 533-34 (applying the rule in Employment Div., Dept. of Human Resources of Or. v. Smith, 494 U.S. 872 (1990); see also State v. Kimmel, No. 28893 (App. Jan. 23, 2009) (SDO) (applying Sunderland to defendant's prosecution under HRS §§ 712-1249.5 (1993) and 329-43.5)).

Harris also contends she has pled a hybrid of constitutional rights warranting strict scrutiny analysis of all

6

of her claims. A "hybrid" case is one in which a claim under the U.S. Constitution's free exercise clause can be linked to another constitutional claim and may thereby merit strict scrutiny review rather than the analysis used in Smith and Sunderland. See Smith, 494 U.S. at 881 ("The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved . . . the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press."). In Sunderland, the Hawai'i Supreme Court noted that case did not involve a hybrid rights situation because on appeal the defendant had failed to preserve his constitutional right to privacy argument, and the court expressed no opinion on the meaning and application of Smith's language regarding "hybrid situations." Sunderland, 115 Hawai'i at 404 n.10, 168 P.3d at 534 n.10.

The circuit court concluded Harris failed to present a hybrid claim and we agree. Harris's motion seeking dismissal and her opening brief state in a conclusory manner that her prosecution violates multiple constitutional rights. Harris provides almost no argument and states no facts to support these general claims. Although the application and scope of the hybrid claim doctrine is unclear,[2] it cannot be true that a party can merely invoke a number of rights without support or detail, combine it with a claimed free-exercise right, and thereby force the government to demonstrate a compelling state interest. See, e.g., Miller v. Reed, 176 F.3d 1202, 1207 (9th Cir. 1999) (requiring at minimum a "colorable claim" that a companion right

---

[2]    See, e.g., Kissinger v. Bd. of Trustees of Ohio State Univ., 5 F.3d 177, 180 (6th Cir. 1993) (rejecting the "hybrid" claims doctrine as "completely illogical"); EEOC v. Catholic Univ. of Am., 83 F.3d 455, 467 (D.C. Cir. 1996) (requiring an independently viable claim of interference with a companion constitutional right); see generally Note, The Best of A Bad Lot: Compromise and Hybrid Religious Exemptions, 123 Harv. L. Rev. 1494 (2010) (identifying and describing disagreement among courts and commentators).

has been violated: a fair probability or a likelihood, but not a certitude, of success on the merits).

One of Harris's companion claims is that her prosecution infringes upon her right to privacy under the Hawai'i Constitution. She argues she should be free to grow and consume marijuana in the privacy of the church property. However, in State v. Mallan, 86 Hawai'i 440, 446, 950 P.2d 178, 184 (1998), a plurality of the Hawai'i Supreme Court stated "the purported right to possess and use marijuana is not a fundamental right and a compelling state interest is not required." See also Sunderland, 115 Hawai'i at 408, 168 P.3d at 538 (stating the purported right to possess and use marijuana, which is not a fundamental right, is not transformed into a fundamental right when the activity is conducted in the home) (Moon, C.J., concurring and dissenting); Kimmel, SDO at 3.

Harris also claims the statutes violate her equal protection rights under the U.S. and Hawai'i Constitutions. The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Harris bases her argument on the fact that HRS § 281-101.5(b)(2) (2007 Repl.) permits possession of liquor by a minor in connection with the minor's participation in religious ceremonies and that federal law contains certain exemptions for peyote under 21 C.F.R. § 1307.31. However, there is no religious classification in the statutes under which Harris was charged, and because no suspect classification or fundamental right is involved, our inquiry is whether there is a rational basis for the challenged statute. State v. Hatori, 92 Hawai'i 217, 225, 990 P.2d 115, 123 (App. 1999). Courts have held that the Rastafarian faith is not similarly situated to religions covered by exemption statutes because its marijuana use is not controlled, McBride v. Shawnee Cnty., Kansas Court Servs., 71 F. Supp. 2d 1098, 1101 (D. Kan. 1999); State v. McBride, 955 P.2d 133, 139 (Kan. Ct. App. 1998), and moreover marijuana can be

rationally distinguished from other substances for the purposes of equal protection analysis. Hatori, 92 Hawai'i at 226, 990 P.2d at 124. There is no equal protection clause violation.

We further reject Harris's claim that the statutes are void for vagueness. "A penal statute is vague if a person of ordinary intelligence cannot obtain an adequate description of the prohibited conduct or how to avoid committing illegal acts." State v. Bui, 104 Hawai'i 462, 464, 92 P.3d 471, 473 (2004) (internal quotation marks omitted). The statutes at issue here are not vague because they describe the proscribed conduct in understandable terms and adequately inform a person on how to avoid committing the offense. The statutory provisions on the medical use of marijuana do not create vagueness because the statutes adequately define terms such as "debilitating medical condition," "qualifying patient," and "written certification" needed to fall within the medical use statutory scheme.

B.      Suppression Of Evidence

Harris also moved to suppress evidence before trial, claiming the search warrant was invalid. Harris argues: (1) the confidential informant's tip was not trustworthy and could not be used to establish probable cause; (2) the officer defaced the warrant; (3) the warrant was vague because it failed to distinguish between criminal and innocent possession of marijuana; and (4) the warrant did not specifically list exigent circumstances authorizing a nighttime search. All of Harris's challenges to the warrant are without merit.

(1) The informant's tip provided probable cause because it was corroborated by officers who visited the area before obtaining the warrant. State v. Detroy, 102 Hawai'i 13, 19-20, 72 P.3d 485, 491-92 (2003) (stating that an officer's corroboration of an informant's tip could properly support the conclusion that the informant was truthful). The affidavit submitted in support of the warrant stated the officers had immediately smelled a strong odor of marijuana, observed a three-foot marijuana plant while standing on the driveway, and spoke

with several people on the property who identified themselves as members of the church and asserted the right to grow marijuana.

(2) and (3) The circuit court found the warrant had been properly signed and approved by a judge, and nothing in the record supports Harris's allegation of defacement or indicates the court clearly erred in its finding. The record also belies Harris's claim that the officer fabricated statements in the affidavit in support of the warrant and that the police failed to document Harris's claims of religious use. Moreover, the warrant was sufficiently particular, and Harris provides no authority for her claim to "innocent possession of marijuana."

(4) The warrant's authorization of a nighttime search was not invalid. "Although it would be good practice for judges authorizing nighttime searches to include a separate paragraph on the face of the warrant specifically acknowledging the deviation from the ordinary prohibition against such searches . . . there is no requirement that a nighttime search warrant list exigent circumstances or contain a specific finding[.]" State v. Richardson, 80 Hawai'i 1, 3, 904 P.2d 886, 888 (1995) (internal quotation marks and citations omitted).

Furthermore, a nighttime search warrant can be justified when a search will not violate the policies underlying the nighttime search prohibition. Id. at 7, 904 P.2d at 892. These policies include protection of the greater expectation of privacy at night and a heightened safety risk which may arise from forcible nighttime entries. Id. Neither policy was implicated in this case. The affidavit in support of the warrant stated the police had already arrested several people and secured the property earlier that same day. The authorization for a nighttime search in this case was justified.

C.        Trial Proceedings

Harris raises several points of error relating to the trial leading to her conviction. Harris contends the circuit court erroneously: (1) denied her motion to compel discovery; (2) conducted its proceedings with a tainted jury; (3) denied

10

Harris due process; (4) denied a proffered exhibit; (5) denied her the opportunity to raise defenses regarding her mental state; (6) concluded the the Religious Land Use and Institutionalized Persons Act (RLUIPA) inapplicable; and (7) imposed cruel and unusual punishment.

(1) The circuit court did not abuse its discretion in denying Harris's motion to compel discovery. In her motion, Harris sought to compel production of, among other things, the personnel files of all officers present at the search, the officers' time cards for February 2007, and transcripts of any and all police commission meetings regarding certain officers, contending the information may be relevant to impeaching the officers' credibility. The circuit court concluded the motion was a vague and overly broad "fishing expedition," and the court permitted Harris to file another motion stating more specific reasons supporting disclosure, though Harris did not file another motion. We conclude Harris fails to demonstrate an abuse of discretion.

(2) Harris's claim of taint to the jury does not warrant a new trial. The record indicates that before jury selection, an unknown person distributed fliers regarding an unrelated marijuana case to a number of potential jurors, without either of the parties' knowledge or permission. The circuit court identified the potential jurors who had contact with the unknown person, and the court and the parties' attorneys questioned each of the potential jurors about their contact and whether the contact influenced their ability to be fair or impartial. Harris's attorney then agreed to proceed with the trial. The record indicates Harris did not move for a mistrial or to disqualify a juror because of the alleged taint on the jury. "The general rule is that where the juror misconduct is known by a party or his counsel, he cannot await verdict and then complain." Stratis v. Pac. Ins. Co., Ltd., 7 Haw. App. 1, 7, 739 P.2d 251, 255 (1987) (internal quotation marks omitted).

(3) Harris claims she was denied the Sixth Amendment right to confront witnesses because the officer who obtained the warrant did not testify at her trial. However, the Confrontation Clause applies only to testimonial hearsay, Davis v. Washington, 547 U.S. 813, 823 (2006); State v. Moore, 82 Hawai'i 202, 223, 921 P.2d 122, 143 (1996), and Harris has not identified any hearsay from the officer that was admitted at her trial. Our independent review of the record indicates no hearsay was admitted.

Harris claims she had the right to cross-examine the officer about his role in obtaining the search warrant and submitting the supporting affidavit. However, neither the warrant nor the affidavit was entered into evidence at trial. At the hearing on Harris's motion to dismiss the counts and suppress evidence, the officer at issue was present in court, and Harris had the opportunity to examine him then. Therefore, the circuit court did not commit plain error by failing to sua sponte order a subpoena for the officer's appearance at the jury trial.

(4) and (5) The circuit court did not err when it excluded Harris's offer of an annotated copy of the Hawai'i Constitution as hearsay. Nor did the circuit court err when it excluded evidence relating to a mistake of law defense pursuant to HRS § 702-220 (1993). Mistake of law is an affirmative defense "when the defendant acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous[.]" HRS § 702-220 (emphasis added). At trial, Harris sought to introduce an administrative ruling for the purpose of raising a mistake of law defense, but she made no showing that the ruling was "afterward determined to be invalid or erroneous." In fact, she argues the ruling is valid and supports one of her arguments. Therefore, the circuit court did not err in denying her proffered evidence, nor did it err when it denied her request for jury instructions on the mistake of law defense and the choice of evils defense under HRS § 703-302 (1993). See Loevsky v. Carter, 70 Haw. 419, 432, 773 P.2d 1120,

12

1128 (1989) (jury instruction should not be given unless there is evidence introduced to support that instruction).

(6) The circuit court did not err in concluding RLUIPA is inapplicable to this case. RLUIPA applies to "land use regulation" and to impositions of a "substantial burden on the religious exercise of a person residing in or confined to an institution[.]" 42 U.S.C.A. §§ 2000cc, 2000cc-1.

(7) Finally, "[t]here is no question here of cruel and unusual punishment. It was within the prerogative of the legislature to make the decision that possession of marijuana should not be decriminalized. . . . [W]e find no warrant for judicial interference in this case." State v. Baker, 56 Haw. 271, 284, 535 P.2d 1394, 1401-02 (1975) (footnote omitted).

## IV. CONCLUSION

The November 3, 2010 "First Amended Findings Of Fact, Conclusions Of Law, And Order Denying Defendant's Motion To Suppress Evidence And Dismiss Complaint For Remedy Of State And Federal Constitutional Violations And For Heightened Judicial Scrutiny Filed February 19, 2009" and the November 7, 2011 Judgment entered in the Circuit Court of the Third Circuit are affirmed.

DATED: Honolulu, Hawai'i, May 20, 2013.

On the briefs:

Gary C. Zamber
for Defendant-Appellant.

Ricky R. Damerville
Deputy Prosecuting Attorney,
County of Hawai'i
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge